This case is Fiore v. Prime Care. Good morning, counsel. Good morning, Your Honor. Is it Fyfe? Fyfe, yes, Your Honor. Fyfe. Good morning, Your Honor. May it please the Court, Daniel Fyfe for Appellant Michael Fiore. I am joined at the counsel table by my colleague, Kurt Johnson. Good morning. The main question in this case is whether the Court can reasonably infer that the defendants were deliberately indifferent, where they recognized that Mr. Fiore required follow-up care for a serious medical need, delayed or denied that care for non-medical reasons, and thereby caused Mr. Fiore needless pain and a permanent deformity. Is part of the reason that the care was delayed because of your client's conduct? No, Your Honor. Let me go defendant by defendant to answer that question. Nurse Hartsbecker saw Mr. Fiore at 4 p.m. on November 20th, the day he sustained his injury. And she gave him the ice pack. She gave him an ice pack and promised that she would, quote, make sure, end quote, that he received Motrin at 8 p.m. Nothing in their interaction indicates that he behaved in any sort of untoward way. And implicit in Nurse Hartsbecker's promise was that she had the ability to make sure that he would receive Motrin, and that, therefore, that had she followed through on that promise, he would have, in fact, received Motrin at the 8 p.m. med pass, notwithstanding any other sick call issue that arose with Nurse McCulley. With respect to Nurse McCulley, Nurse McCulley denied Mr. Fiore any sort of care, solely based on the sick call policy, without any evaluation of his individual medical needs. And it was after that that he pushed the ice pack through the door and was punished as a result. Coming to Nurse Hewitt, again, in the first sick call interaction with Nurse Hewitt, there's no allegation of any sort of confrontation between the two parties. Nurse Hewitt recognized that Mr. Fiore had a serious injury. And that was on the 21st now? This is on the 21st, the following day, yes. Nurse Hewitt recognized that Mr. Fiore had a serious injury. She prescribed Motrin. And she wrote that she will notify the provider for further orders. Mr. Fiore, the null- Didn't she give him five days' worth of Motrin? Yes, she did, Your Honor. So it was more than just prescribing. She gave him five days' worth of Motrin. Yes, Your Honor. But she wrote that she will notify the provider for further orders. The null of Nurse Hewitt's deliberate indifference there was that she allegedly failed to notify the provider for further orders. And in recording that, she recognized that the Motrin she had provided Mr. Fiore was insufficient to properly treat his injury and that further orders were, in fact, required. And having recognized that, her subsequent failure to notify the provider constitutes an unexplained delay of follow-up care, despite recognizing a serious need that is sufficient at the pleading stage to support an inference of deliberate indifference. Now, coming to the final incident alleged in the complaint, the second sick call a little more than a week after Mr. Fiore's injury. The defendant's position is that Mr. Fiore did not receive care there due to his refusal to pay a co-pay. But Mr. Fiore's allegation is that the co-pay policy did not apply to follow-up care. And that he specifically informed Nurse Hewitt that he required follow-up care. And Nurse Hewitt, of course, would have known that Mr. Fiore needed follow-up care, having herself recognized as much on the 21st and having known that, according to Mr. Fiore's allegations, that she had never provided it. So is that deliberate indifference or is it maybe negligence or bad manners? Your Honor, at the pleading stage, Mr. Fiore can establish deliberate indifference and does here by pleading that, in Nurse Hewitt's case, that she recognized that Mr. Fiore had needed further care for a serious injury and then failed to provide that care for an unexplained reason. That, at the pleading stage, has been repeatedly recognized as sufficiently alleged deliberate indifference. In Nurse Hewitt's case, you have the additional fact that, according to Mr. Fiore's allegations, she denied that follow-up care at the second sick call for a pretextual reason. According to Mr. Fiore, she denied him the care again because he wouldn't pay the copay. But his allegations are that the copay requirement didn't apply, that he reminded Nurse Hewitt of that fact. And, of course, it's reasonable to infer that she would have, in fact, known of what the copay policy was. And so, taking all of that together, it's reasonable to infer that the denial was pretextual and, therefore, that it was covering up for some other improper, invalid reason. Now, this is not to say that deliberate indifference is the only explanation that could possibly emerge after discovery. But that's not the standard at this stage. The possibility that the evidence will show that it was something less than deliberate indifference is the sort of benefit of the doubt that defendants are not entitled to at the pleading stage. To the contrary, the law is that Mr. Fiore is entitled to every reasonable inference in his favor. And here, drawing those inferences, and especially when Mr. Fiore's pro se status is taken into account, Mr. Fiore's allegations clearly pass over the line of supporting a reasonable inference of deliberate indifference by the three defendants and by prime care. I'd like to then turn briefly to the alternative issue of denial of leave to amend. Let me ask you before you get to the denial of leave to amend. Our case law on an Eighth Amendment constitutional violation not only requires deliberate indifference, but it requires deliberate indifference to the serious medical needs of a prisoner. And why is what you are alleging in your complaint, why does it constitute a serious medical need? How about talking a little bit about that? Certainly, Your Honor. So this Court's definition of what constitutes a serious medical need, it's identified a number of independently sufficient criteria. One is that the need is diagnosed by a physician as requiring treatment. Another is that it results in serious pain. Mr. Fiore's allegations undisputedly here, I'm sorry, Mr. Fiore's injury undisputedly here qualifies for both. It was diagnosed as requiring treatment and it resulted in severe pain. And defendants have never contested, in fact conceded throughout, that Mr. Fiore in fact sustained serious medical need here. And so that was conceded below at the R&R and district court level and has never been disputed on appeal. But I need to know for the record that I broke my toe last summer and it's very painful. I appreciate that and agree with that, Your Honor. Was it your big toe or little toe? Well, it was not even my big toe. It was my second toe and it still hurt very much. I think that you want to say rebuttal time? Oh, I'm sorry, Your Honor, if I forgot to say that. Yes, if I could reserve four minutes for rebuttal, please. I think that your draw touched on an extremely important point here. I think that there is sort of a subtext of downplaying Mr. Fiore's injury because it involves a toe. But Mr. Fiore's allegations are that he was in severe and immense pain. And a broken bone in one's big toe, like a broken bone in one's thumb, can be a serious injury requiring a cast and even surgery. And obviously on top of the pain associated with breaking any bone is the fact that Mr. Fiore was sustaining additional pain from having to walk on his broken bone. And so, again, that issue has never been contested here and rightly so. So turning briefly to the issue of denial of leave to amend, our position is that Mr. Fiore's allegations are more than sufficient to pass straight through to discovery and justify reversal of the district court on that basis. But even if the court disagrees, Mr. Fiore should at least receive an opportunity to amend his complaint to add allegations and clarify his existing ones. The district court concluded that amendment would be futile because it misconstrued Mr. Fiore's allegations as challenging only the adequacy of treatment he received. But Mr. Fiore's allegations clearly point to the alternative basis of Eighth Amendment deliberate indifference, of the defendants failing to provide the care that they recognized to be necessary. And properly understood in that light, Mr. Fiore could clearly add detail about his interactions with the defendants at the various points in the complaint and about the appearance of his toe and about their conduct that would strengthen the inferences both of their knowledge of his need for treatment for a serious injury and of their deliberate indifference failure to provide it. What do you make of the timeline? And by that I mean it wasn't until December 4th that he finally sees a PA, right? Yes, Your Honor. So it's about three weeks after the break. Two weeks after the break. Two weeks after the break. And that was the first time anybody recognized the toe was probably broken. The PA recognizes it's probably broken and you need x-rays. Yes, Your Honor. Mr. Fiore's claims are not based on the defendant's misdiagnosis of his toe. They're not based on the defendant's failure to diagnose his toe as broken. They are based on the defendant's recognition that he was in severe pain and had a serious medical need and the failure to provide the care that they recognized to be necessary. So was it the failure to provide the pain relief? In the case of Nurses Hartsbecker and McCulley, it was. In the case of Nurse Hewitt, it was more. Because as you pointed out earlier, Nurse Hewitt, in fact, did provide the five days of Motrin. Her failure is twofold. Her failure is first in failing to obtain the further orders that she recognized to be necessary. And admittedly, the record is not clear on what those further orders are, but it's reasonable to infer based on the grievance coordinator's actions that those further orders would have included sending him to a PA earlier to obtain an x-ray, thereby obtaining an earlier diagnosis and providing a proper treatment for his toe. One of the reasons that Mr. Fiore was told that he needed surgery was that because his injury had sat essentially untreated for two weeks, his toe had begun already healing correctly, and so the surgery was deemed required to correct it. The other aspect to Nurse Hewitt's deliberate indifference, though, is that at the second sick call, when Mr. Fiore remained in severe pain and told her as much, she then denied pain treatment as well as any sort of further orders. Thank you, Your Honor. Thank you. Mr. Nianoski. Good morning. Good morning, Your Honors, and may it please the Court. I am John Nianoski. I represent Nurse Christine Harzbecker, Nurse Stacey McCulley, Nurse Missy Hewitt, and her employer at the time, Prime Care Medical, Inc. Your Honors, I submit that Plaintiff was not denied care, but he simply disagrees with the care and the timeliness of the care that he was provided. And since this is nothing more than a difference of opinion as to the care that was provided and the timeliness of saying, the District Court properly dismissed this case and properly dismissed this case with prejudice. And I, too, will follow through kind of the timeline of the various nurses, if that's acceptable to the Court. For Nurse Harzbecker, she had one interaction with the Plaintiff. He came to her, said that I hurt my toe. She looked at it. It concedes that she examined it. She gave him an ice pack, which was treatment. She did allegedly state that we'll get you Motrin at the next med pass. And I also think it's important to kind of understand how this works as far as the process. The nurse is there distributing medication. Hang on a second. Yes, Your Honor. She allegedly said to him, we'll get you pain killer at the next med pass. Yes, Your Honor. We accept the facts as the petitioner has presented them. So that is not an issue of fact in our review of the case at this point, that we accept the fact that she did say that. Your Honor, that is absolutely correct, and I concede that point. I didn't mean anything other than it's been alleged that. I'm not disputing that it was not alleged. And we're bound by that allegation. At this point, yes. Thank you, Your Honor. So she says, we'll get you medication at the next med pass. And as I was starting to say, they're there not doing sick call or doing rounds. She was there for a purpose of doing med pass. So, again, we have to look at the total context of what's going on here and what she knew at that time, which was, hey, I'm here for a separate function. This gentleman says that he's got a problem. I see that he has a problem. I addressed what I could right now. Somebody else will follow up afterwards. I submit to you that that's appropriate. Now, the fact that Nurse McCulley did not give him pain medication later shouldn't be attributable to Nurse Harsbecker. Nurse Harsbecker wasn't the one who refused to give care. Using their place. But Nurse Harsbecker indicated she would take steps to see he got that further care. And nothing happened? She either didn't follow up, or the nurse who came in the evening chose not to follow the recommendation. We don't know, but we have to look at the facts in the light most favorable to Mr. Fuhrer. One thing we do know is that, at most, he would have missed one dose of Motrin based upon the actions of Ms. Harsbecker. So I submit to the court that missing one dose of Motrin does not equate to deliberate indifference. And that's the most that we can attribute to Nurse Harsbecker. Now, when we get to Nurse McCulley, she told him he needed to submit a sick call slip. Now, again, we have to look at the context of where this is occurring. She's there doing medication pass. He refuses to do the sick call process. And I think another important thing to keep in mind is, I have conceded at this point that he suffered a serious injury. But that does not mean it was an emergency or an emergent injury. Why does that matter? It matters when we're talking about timeliness, and also whether you go through the sick call process. Sick call process is, and as we see in the record, you fill out your slip, you say what your complaint is, it's triaged, and then you're seen by a professional. That's what happened. That's different than an emergency where I'm having chest pain, I feel like an elephant's on my chest, and the pain's gone down my left arm. Submit a sick call slip. That, arguably, I would submit to the court as absolutely deliberate indifference. But what we're looking at here is, in all due respect, a broken toe hurts. I'm not arguing that point, Your Honor, at this point. But this is not an emergent issue that needed care immediately. So we have to look at, again, the context of Nurse McCulley. He complains of a problem, he refuses to submit a sick call slip, and, using his terminology, shoved his ice that he was provided out of a cell door. So from a subjective component for Nurse McCulley, he's refused, in essence, by shoving the ice out of the door, the care that's been rendered. He refuses to go through the sick call process. How bad can this really be? And certainly, and it's been asserted that there's no delayed diagnosis of the injured toe or the broken toe at this point. So they concede that the fact that she did not diagnose the broken toe at that point, that's not deliberate indifference, and it's not even negligence. So in that context, having the inmate submit a sick call slip isn't denying care. It's just having him go through the process, which he eventually did. And he did submit the sick call slip, and he was seen the very next day. And he was seen by Nurse Hewitt, who evaluated him, did an examination, said that it was bruised. It was warm to touch, so she obviously touched it. No obvious deformity, I might add. So there's nothing about it other than it's bruised. Could be nothing more than he's stoving her toe. She orders the five days, or as a nursing measure, the five days of Motrin. There's no dispute that he received those five days. Now, it's been plaintiff's contention that she says, and again, it's in the sick call slip, we'll contact provider for further orders. Plaintiff contends that didn't happen. I submit to the court, if you look at what he alleged in his complaint, and that's at record site JA21, he says that she, and that's referring to Nurse Hewitt, she did my sick call 28 hours after I broke my toe. She said she would notify the provider for further orders, but never did notify the physician's assistant. Very next statement. She told me the PA did not want any x-rays. I submit to the court that that's a clear indication that she did call the PA, and that the PA just didn't order anything else. And that she communicated that to the plaintiff. So I know he says it one way, but right beneath it, you can't, I submit to the court, you can't have it both ways. You can't not make a phone call, but yet also be informed that the physician's assistant didn't order something additional. And I submit to the court the fact that it took three additional days after the Motrin dose had run its course for him to submit a sick call slip is consistent with him being told the PA didn't want to do x-rays. Because he wasn't expecting anything further. When the condition didn't get better, when he was still having a problem, he sought additional care. Again, he was seen by Nurse Hewitt. She said to him, you have to go through the sick call process. He refused. He doesn't want to pay the co-pay. Well, first of all, this isn't as if you're going to walk into the medical department with $3 and give it. That isn't how this works. It's going to be deducted by the county from his account later. So there's no denial or refusal to provide care. Just as he wasn't prevented from filing this lawsuit without filing the fee in advance, or at the time of filing. It can be deducted later. Looking at it subjectively, he refuses to go through that process. How bad can it be? But yet he did file grievance. He complained. And he was seen by the, based upon the pleadings, he was seen by the physician's assistant a couple of days later. There she diagnoses the broken toe and orders subsequent care. All of this is within a two-week period. And I submit then, within that two-week period, he's evaluated by nursing staff multiple times. He was given ice, which he eventually refused. He was given a course of pain medication to deal with his condition. When he didn't get any better, he sought additional care, and he got it. So within a two-week period, all of that happened, and then it ultimately came to a diagnosis. So to me, and I submit to the court, that based upon this record, it's nothing more than a dispute about the timeliness of the treatment. He got treatment. And he got, frankly, he got appropriate treatment. Now, with regard. I was going to ask about the amendment. Thank you, Your Honor. I was going to transition. So I submit to you, it was clearly appropriate that the case be dismissed. And why it was appropriate for it to be dismissed with prejudice without leave to amend in this case is that the operative facts aren't going to change. I submit to the court, and why this court should affirm, the district court, is that he was evaluated, he was medicated, he was treated, and he received diagnostic testing, which was the X-ray. That doesn't change. Our matrix here is deliberate indifference, right? Correct. He pursued this case's 1983 claim. That is correct, Your Honor. Your client is not the government. It's prime care, correct? That is correct, Your Honor. So what if he amended the complaint to include negligence claims? Well, if he did that, we still would not be, we would then be trying a case in the court of common pleas at Cambria County, which is where we would be, because there wouldn't be subject jurisdiction of this court. Well, the case would be transferred to Cambria County. If he so chose to file a malpractice case, yes. That would be his remedy, you know, because there would be no subject matter jurisdiction for this court. So if you were allowed to amend the complaint and he included negligence claims because you don't have to pursue 1983 claims against the private, you can't really pursue 1983 claims against this private entity, then the case would be sent to state court. That would be, that's how I would envision it, because it was dismissed with prejudice, which would cease all federal jurisdiction, but yet if you overturned the dismissal. To allow him to amend, to include negligence claims. Negligence. It's not futile. And he was doing this pro se. Well, it's futile when it comes to the issue of deliberate indifference, Your Honor. But deliberate indifference is not the matrix if you pursue negligence claims. That's correct. But for literally this courthouse in the Western District, it would be futile because there would be no more jurisdiction. So he would have to pursue that claim in state court. Mr. Nanoski. Yes, Your Honor. On the question of leave to amend. Yes. Weren't there some misstatements in the R&R? Yes, Your Honor. There were. Okay. And are those misstatements significant enough that since the district court adopted the R&R, that on their own that that should lead to the right to amend? I submit to you no, Your Honor, for these reasons. One, the district court indicated, and we don't have a detailed opinion from Judge Gibson. Right. Admittedly. But he does say in his order adopting the report and recommendation that he did his own independent review of the record. He also says. If he did his own independent review, why didn't he continue with the mistakes that had been made in the original R&R? Well, respectfully, I do not believe that he did, Your Honor, because what he said was nothing about what the plaintiff's arguments were and the objections undermine the recommendation, which is my argument to this court that the operative facts of care, medication, et cetera, that isn't going to change. So, yes, Judge Fischer, there was absolutely a misstatement in the record, but that one misstatement of who provided the care, whether it was the nurse or the physician's assistant, doesn't change everything leading up to that point. So that. Absolutely. It was more than who provided the care. It was some of the time span incurred in providing the care and some of the actual person meeting situations in which they met, which I can only assume was caused by confusion by the magistrate judge in reading the original complaint. And so wouldn't it make a lot of sense to get a professional attorney to look at that complaint and say, would that review rewrite the complaint in a way which would accurately reflect the contentions of the plaintiff? Well, Your Honor, I submit that he himself, and I understand Pro Se, and I'm not holding him to the same standard as learning counsel, Your Honor, but he did point out the errors in his objections. He did. So he took steps to educate, at least Judge Gibson, as to the error that was in the report and recommendation. And again... The same in the court version. Well, Your Honor, what he said was he did his own review and he also says that what was raised in the objections doesn't undermine the recommendation. And I submit to the court that's consistent because even if you take those facts out, there's not deliberate indifference. So even if you remove the misstated facts, that still leaves us with an inmate who was evaluated by a nursing staff on multiple occasions, received a course of pain medication, and ultimately within a two-week period was diagnosed with the problem. And again, there's no allegation that there was even negligence for the diagnosis. So they misdiagnosed him, or they made a diagnosis, but it was too late to give him treatment. He was never treated. So is it enough? I know what your problem is, but time's up. Well, if there's no negligence as to the time for the diagnosis, then unfortunately maybe that's his result. But you could have an adverse result without negligence, much less with deliberate indifference. So even if, unfortunately, the window had closed, if it's not as a result of deliberate indifference and they're conceding it wasn't as a result of negligence, then I submit to the court that it's an unfortunate result that's not compensable. So if there are no further questions, I'm out of time. I respectfully request that the court affirm the dismissal of this case with prejudice. Thank you. Thank you very much. Your Honor, if I could briefly respond to a number of points that my colleague raised. First, with respect to amendment, Judge Restrepo, notwithstanding the fact that Prime Care is a private entity, because it is a state contract providing services on behalf of the state, it is a state actor that can be sued under 1983. But could it also be sued under negligence law? Yes, it could also be sued under negligence law. So in addition to adding allegations that would further enhance Mr. Fiori's 1983 claims, he could certainly add negligence claims over which the federal court would have ancillary jurisdiction. Judge Fischer, with respect to your question about the materiality of the errors, first I think it's worth emphasizing that the errors were actually introduced in the defendant's motion to dismiss briefing and then just adopted verbatim in the magistrate's R&R. And the errors are, in fact, critical to the magistrate and district court's determination that amendment would be futile. So let's talk about those errors a second. Don't those errors in the R&R relate specifically to the conduct of Nurse Hewitt? Yes, they relate only to Nurse Hewitt's conduct. So if that argument is a good argument as to Nurse Hewitt, it doesn't necessarily mean that an amendment against the other defendants should be granted because of the misstatements in the R&R, does it? In this case, Your Honor, the errors with respect to Nurse Hewitt colored the district court's understanding of all of Mr. Fiori's claims. And I'll explain why. The core of the error that opposing counsel went through a pretty persuasive chronology of how each defendant interacted with your client. And I think that to a certain extent you need to parse out that action to be able to show that an amendment wouldn't be futile was at least to some of the defendants. Well, at least as to Nurse Hewitt. The core of the error was in believing that Nurse Hewitt, in fact, provided further care on December 4th by allowing Mr. Fiori to see the physician's assistant. Of course, the essence of Mr. Fiori's allegation against Nurse Hewitt is that she refused to provide those further orders, that follow-up care, despite recognizing that it would be necessary. So as to Nurse Hewitt, the error is clearly material. But overall, this error with respect to Nurse Hewitt led the district court to misconstrue Mr. Fiori's allegations as pointing only towards an adequacy of treatment claim and not towards challenging Nurse Hartsbecker's failure to provide the care that she recognized to be necessary in the form of Motrin at the 8 p.m. Med Pass and Nurse McCulley's denial of care for a purely bureaucratic reason without any sort of individualized medical assessment of the sort that this Court recognized as necessary in Olivey-Thomas. I'd like to briefly address a couple of points with respect to Nurse Hewitt. First, as a matter of law, the pain associated with a broken bone has been recognized as a sort of emergent injury, an emergent condition requiring prompt treatment. In Brown v. Hughes, the 11th Circuit recognized that as little as a six-hour delay in receiving pain medication for a broken foot could constitute deliberate indifference. In Newsom v. Peterson, the 6th Circuit recognized that a nine-hour delay in receiving migraine medication could constitute deliberate indifference. The avoidance of unnecessary pain is of a core interest that the deliberate indifference doctrine is meant to protect. So the pain associated with a broken bone certainly rises to that level. As to Nurse Hewitt, my colleague quoted the allegation at JA-21 that Nurse Hewitt never provided follow-up care, and then my client alleges that Nurse Hewitt told him that the PA didn't want x-rays. The fair inference from that, and certainly the inference that Mr. Fiori would be entitled to, is that Nurse Hewitt lied to him and gave him another pretextual reason. In other words, that she did not, in fact, follow up with the physician's assistant, but that when confronted about this, she just gave him an answer to sort of put him off. And that pretextual, that further evidence of pretext, further allegation of pretext, further supports the inference that Nurse Hewitt was acting towards my client with deliberate indifference. And finally, the fact that Nurse Hewitt gave Mr. Fiori five days of medication is also a powerful indicator that she recognized that he, in fact, had a serious injury, which underscores the importance of her actually following through on recognizing that he needed further care. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. Thank you. Thank you very much, counsel, for doing this pro bono. It's greatly appreciated. We will take this matter under advisement and get back to you shortly. Thanks again. Thank you, Your Honor. Thank you, counsel.